# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| ELIZABETH FAYE BRYANT | * | CIVIL ACTION NO.  12-1222 |
| VERSUS | * | JUDGE ELIZABETH E. FOOTE |
| CAROLYN COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAG. JUDGE KAREN L. HAYES |

## REPORT & RECOMMENDATION

Before the court is Plaintiff's petition for review of the Commissioner's denial of social security disability benefits.  The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C).  For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice**.**

## Background & Procedural History

Elizabeth Bryant protectively filed the instant application for Title XVI Supplemental Security Income payments on May 22, 2006.  (Tr. 49-52, 56).  She alleged disability as of April 9, 2006, because of weak stomach muscles, a tear in her lining, and deep vein thrombosis.  (Tr. 49, 59).  The state agency denied the claim at the initial stage of the administrative process.  (Tr. 34-39).  Thereafter, Bryant requested and received an April 13, 2007, hearing before an Administrative Law Judge ("ALJ").  (Tr. 142-169).  In a June 28, 2007, written decision, the ALJ determined that Bryant was not disabled under the Act, finding at step five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy.  (Tr. 19-29).  Bryant unsuccessfully petitioned the Appeals

Council for review, before filing suit in this court on August 16, 2007.  (Tr. 4-6); *Bryant v. Commissioner, Social Security Administration*, Civil Action Number 07-1348 (W.D. La.) *(Bryant I)*.  After briefing and in due course, the court reversed the Commissioner's decision and remanded the matter for further proceedings and development.  *See* Aug. 11, 2008, Judgment and July 17, 2008, Report and Recommendation; Tr. 199-207).

Meanwhile, on November 8, 2007, Bryant protectively filed a new application for Title XVI Supplemental Security Income payments.  *See* Tr. 176, 246-249.  The state agency denied this subsequent application at the initial stage of the administrative process; Bryant timely requested ALJ review.  (Tr. 217-220, 220-230).

Upon receipt of this court's decision remanding Bryant's initial application, the Appeals Council vacated the final decision of the ALJ and assigned the matter to an ALJ for further proceedings consistent with the order of the court.  (July 31, 2009, Order of Appeals Council; Tr. 211-214).  In so doing, the Appeals Council observed that remand of the original application rendered Bryant's subsequent application duplicative; thus, it directed the ALJ to associate the two claims for decision.  *Id.*

On June 15, 2010, a different ALJ held a new hearing in the matter to entertain testimony from Bryant and to afford her counsel opportunity to cross-examine a medical expert, Vern Laing, M.D., consulted by the ALJ.  (Tr. 478-527).  On June 25, 2010, the ALJ issued two nearly identical decisions denying Plaintiff's applications at step five of the sequential evaluation process.  (Decision on the Nov. 8, 2007, Application, Tr. 173-185; Decision on the May 22, 2006, Application, Tr. 528-540 [doc. # 15]).  Bryant petitioned the Appeals Council to review the unfavorable decisions.  On March 8, 2012, however, the Appeals Council denied the request for review; thus, the ALJ's decision became the final decision of the Commissioner.  (Tr. 170-172).

On May 11, 2012, Bryant filed the instant complaint for judicial review of the Commissioner's final decision.  Succinctly restated, she alleges the following errors,

1)   The ALJ's residual functional capacity assessment is not supported by substantial evidence; and

2)   The ALJ failed to meet his burden at step five of the sequential evaluation process.

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical

or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)     An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2)     An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.

(3)      An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4)     If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5)     If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See Boyd v. Apfel*,  239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).  When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated.  *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990).  If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis.  *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## The ALJ's Findings

### I.      Steps One, Two, and Three

The ALJ determined at step one of the sequential evaluation process that Bryant had not engaged in substantial gainful activity during the relevant period.  (Tr. 178, 533).  At step two, he found that she suffers severe impairments of Factor V Leiden, recurrent ventral hernia, obesity, pulmonary embolism, scoliosis of the thoracic spine, and degenerative disc disease of the thoracic spine.  *Id.*  He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at step three of the process.  (Tr. 179, 534).

### II.     Residual Functional Capacity

The ALJ next determined that Bryant retained the residual functional capacity to perform light work,[1] except that she can only occasionally climb ramps and steps, but never climb

---

[1]  Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide

ladders, ropes, or scaffolds.  (Tr. 179-180, 535).  She also can occasionally stoop, kneel, and crouch, but never crawl.  *Id.*

### III.      Steps Four and Five

The ALJ concluded at step four of the sequential evaluation process that Bryant had no past relevant work.  (Tr. 183, 538).  Accordingly, he proceeded to step five.  At this step, the ALJ determined that Bryant was a younger individual, with a high school education, and that transferability of skills was immaterial because she had no past relevant work.  *Id.*  He observed that given Bryant's vocational factors, and if she were capable of the full range of light work, the Medical-Vocational Guidelines would direct a finding of not disabled.  20 C.F.R. § 404.1569; Rule 202.20, Table 2, Appendix 2, Subpart P, Regulations No. 4.  (Tr. 184, 539).

However, because Bryant's residual functional capacity did not permit her to perform the full range of light work, the ALJ relied on vocational expert ("VE") testimony provided at the initial 2007 hearing to discern whether, and to what extent her additional limitations eroded the occupational base for unskilled light work.  *See* Explanation by Appeals Council, Tr. 170.  In response, the VE identified the representative jobs of cashier II, *Dictionary of Occupational Titles* ("DOT") Code # 211.462-010, and telephone quotation clerk, DOT Code # 237.367-046, consistent with the ALJ's RFC and Bryant's vocational profile.  (Tr. 184, 539, 165-168).[2]

---

range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[2]  The VE testified that for the cashier job, there were 3,157 positions regionally and 160,784 positions nationally.  (Tr. 24-25).  For the telephone quotation clerk, there were 1,283 such positions regionally and 93,810 nationally.  (Tr. 166).  This incidence of jobs constitutes a significant number of jobs in the "national economy."  42 U.S.C. § 423(d)(2)(A); *Johnson v.*

## Analysis

I.     **Residual Functional Capacity**

a)     Chronology of Plaintiff's Treatment History

In 2001 and 2004, Bryant underwent surgical repairs for a hernia.  (Tr. 86-88).

From April 9-18, 2006, Bryant was hospitalized for IVC filter placement and history of multiple DVTs.  (Tr. 90-91).  During this hospitalization, she underwent a recurrent incisional hernia repair, small bowel resection, anastomosis, and lysis of adhesions.  *Id.*  She was discharged with a diagnosis of ventral incisional hernia status post repair.  *Id.*  For a six week period, she was limited to no heavy lifting and no strenuous activity.  *Id.*

Plaintiff again was hospitalized from April 22, 2006, until May 16, 2006, for an abdominal wound infection.  (Tr. 105-106, 114).  On April 27, 2006, she underwent an incision, drainage, and debridement of abdominal wound with washout and a dressing change with Vac-Pak placement.  (Tr. 103-104).  On May 15, 2006, plaintiff underwent a secondary closure of her surgical wound.  (Tr. 94-95).  Bryant's fever subsequently returned, however, and she returned to the hospital from June 7-9, 2006.  (Tr. 115).

Progress notes from June 26, 2006, indicate that Bryant was not in any pain.  (Tr. 131).

On September 11, 2006, Bryant reported that she experienced continuous stomach-cramping pain.  (Tr. 129-130).

On December 4, 2006, she told her physician that she experienced soft stool throughout the day.  (Tr. 127-128). She indicated continuous, sharp pain that was a seven on a ten point scale (7/10).  *Id.*

_____

*Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

On December 15, 2006, Bryant went to the Family Medical Clinic with complaints of dull, constant stomach pain.  (Tr. 122-126).  Progress Notes reflect that she was to undergo an operation the following month.  *Id.*  She denied, nausea, vomiting, diarrhea, constipation and change in bowel habits.  *Id.*

On January 8, 2007, Bryant presented to the clinic with possible recurrent hernia.  (Tr. 336).  She still was experiencing diarrhea and pain in her abdomen that was relieved with Lortab. *Id.*  Standing helped to relieve her symptoms.  *Id.*

At a March 8, 2007, appointment with Scott Bergeaux, M.D., Plaintiff's chief complaint was hypertension.  (Tr. 342-345).  She described her pain as dull and an 8/10.  *Id.*  Her hypertension was controlled.  *Id.*  For her abdominal pain, an appointment was scheduled at the pain management clinic.  *Id.*

On April 11, 2007, Bryant's pain was an 8/10 .  (Tr. 333).  On April 23, 2007, she underwent a colonoscopy.  (Tr. 331).  On June 20, 2007, Bryant was not in any pain.  (Tr. 328).

Clinic notes from July 18, 2007, document that Bryant was followed for incisional hernia. (Tr. 322-323).  She was positive for diarrhea for one year.  *Id.*  Her hernia symptoms were relieved occasionally with abdominal binders or with bowel movements.  *Id.*  She had diarrhea six times per day.  *Id.*

Clinic notes from November 11, 2007, indicate a presenting illness of incisional hernia. (Tr. 320-321).  Bryant's diarrhea complaints were better since her last visit.  *Id.*  Her symptoms were better controlled with medication.  *Id.*

On January 31, 2008, Plaintiff was seen by Steve Kitchings, M.D., for her hypertension. (Tr. 384-387).  At that time, she was not in any pain.  *Id.*  She had no arthralgias or myalgia.  *Id.*

At a February 8, 2008, office visit, Bryant's chief complaint was right side pain.  (Tr.

381-383).  She described her pain as a 3/10.  *Id*.  It was worse with exercise, but better with rest. *Id.*  She had decreased range of motion of her back.  *Id.*  Her gait was intact; she had no focal motor or sensory deficits.  *Id.*  Her muscle strain was not restricting her activities of daily living. *Id.*

On March 5, 2008, Plaintiff saw Arthur Fort, M.D., at the pain clinic.  (Tr. 373-376).  Her chief complaint was chronic pain.  *Id.*  She described her pain as dull, constant, and a 7/10.  *Id.*

On May 28, 2008, Bryant reported to Dr. Fort that her pain in the mid-abdominal area was constant and an 8/10.  (Tr. 369-372).  According to the history of her illness, by December 6, 2007, Bryant's medication was controlling the pain, and she had become active with her family. *Id.*  She could cook, decorate for Christmas, and attend the school birthday party.  *Id.*  She even slept better.  *Id.*  As of March 5, 2008, her pain was tolerable; she was functioning well.  *Id.*  On May 28, 2008, she was experiencing more fatigue during more demanding events at her children's school.  *Id.*  Upon examination, however, she was able to rise from a sitting position, with a normal gait, no back asymmetry or scoliosis, no spine tenderness, no paraspinous spasm, or decreased range of motion.  *Id.*  She exhibited a full range of motion of the joints, no erythema, no swelling, tenderness, or deformity.  *Id.*  She had no focal motor or sensory deficits. *Id.*  Fort diagnosed her with abdominal pain.  *Id.*

On June 25, 2008, Bryant reported to Dr. Fort that her pain was 5/10, and exacerbated by movement/stress.  (Tr. 463-466).

Bryant was hospitalized from July 11-15, 2008, for recurrent pulmonary embolus, Factor 5 Leiden deficiency, and hypertension.  (Tr. 455-461).  Associated chest x-rays showed no acute cardiopulmonary process, and no scoliotic curvature of the thoracic spine.  (Tr. 393).

On July 17, 2008, Plaintiff was not in any pain, and had no fatigue.  (Tr. 450-454).  On

July 29, 2008, Bryant was not in any pain.  (Tr. 449).  On August 14, 2008, Plaintiff's pain was 0/10.  (Tr. 448).

Bryant returned to the pain clinic on September 24, 2008.  (Tr. 439-443).  Her pain was 5/10.  *Id.*  She explained that this was normal for her.  *Id.*  Although she was unable to perform some activities like working in her yard, she reported that her pain was well-controlled (except for pain in the middle of her back).  *Id.*

On November 17, 2008, Bryant's pain was 0/10.  (Tr. 436).  At a December 4, 2008, visit to the anti-coagulation clinic, however, her pain was an 8/10.  (Tr. 435).

On December 10, 2008, Plaintiff reported that her pain was well-controlled.  (Tr. 431-434).  Her 5/10 pain was normal to her and she felt pretty good.  *Id.*  She had no fatigue.  *Id*.

On December 24, 2008, Plaintiff was experiencing zero pain.  (Tr. 430).  On March 9, 2009, Bryant again was in zero pain.  (Tr. 425).  She had no complaints.  *Id.*

On March 25, 2009, Plaintiff returned to Dr. Fort at the pain clinic.  (Tr. 421-424).  She was not then in pain.  *Id.*  She reported that she was able to shop occasionally; do laundry most times; prepare meals occasionally; wash dishes occasionally; never vacuum/sweep or walk several blocks; occasionally visit friends; never do yard work; and occasionally climb one flight of stairs.  *Id.*  She described her pain as an 8/10, but she felt "great."  *Id.*  Her pain was in her stomach, kidneys, and lower back.  *Id.*  It was sharp, stiff, and worsened with too much activity. *Id.*  She had myalgia, stiffness, and back ache.  *Id.*  Nonetheless, she was happy with her level of pain control.  *Id.*

On April 15, 2009, Amber Bazler, M.D., noted that Bryant's pain was a 5/10.  (Tr. 416). It was sharp and constant.  *Id.*

On May 11, 2009, Bryant was not in any pain.  (Tr. 415).

10

On June 17, 2009, Plaintiff was seen at the pain clinic, with her pain level at a 4/10.  (Tr. 405-408).  She denied sedation from her medication.  *Id.*  She felt that her pain was well-controlled on her current therapy, but she wanted to be more active with her kids.  *Id.*  She had myalgia, stiffness, and backache, but no weakness, gait change, incoordination, paresthesias or tremor.  *Id.*  She was able to rise from sitting, with a normal gait.  *Id.*  There were no focal motor or sensory deficits.  *Id.*

Clinic notes from June 18, 2009, reflect that Plaintiff was not in any pain.  (Tr. 404).

Bryant was hospitalized for chest pain from July 4-10, 2009.  (Tr. 394).  She was diagnosed with ST Elevation Myocardial Infarction, normal coronaries in CAG; Factor V Leiden Deficiency, Multiple Episodes of Pulmonary Embolism; Hypertension Benign Essential; Chronic Abdominal Pain; and history of Umbilical Herniorrhaphy.  *Id.*

On July 23, 2009, Plaintiff again was not in any pain.  (Tr. 392).

b)      Discussion

In his decision, the ALJ reviewed the available evidence, including the hearing testimony, the hospitalizations, the medical treatment history, and the findings of the non-examining state agency physician(s)/medical expert.  He noted that other than a transient limitation on her ability to lift and carry, no treating physician had imposed any limitations of functioning.  (Tr. 183, 538).  As for the findings of the medical expert, Vern Laing, M.D., the ALJ noted that Laing had reviewed the medical record and Bryant's impairments, but opined that the impairments were not severe.  (Tr. 183, 538, 469-527).  Although the ALJ stated that he afforded "significant weight" to Dr. Laing's opinion, he nonetheless found that, in combination, Bryant's impairments were severe, and that they limited her to no more than a reduced range of light work.  (Tr. 183, 538).

Plaintiff argues that, rather than according "significant weight" to Dr. Laing's opinion,

the ALJ effectively rejected it.  The argument follows that once the ALJ discounted Laing's assessment, the remaining record did not provide substantial evidence to support an RFC for a reduced range of light work as found by the ALJ.  The court is sympathetic to this argument.  Frequently, when no medical provider has issued an opinion or medical source opinion regarding the effects of a claimant's impairments, the omission requires reversal and remand.  *See e.g., Bryant I.*  However, the absence of a medical source statement, "does not, in itself, make the record incomplete."  *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  In such a situation, the court's inquiry properly "focuses upon whether the decision of the ALJ is supported by substantial evidence in the existing record."  *Id.*

The undersigned is persuaded that this case presents one of the infrequent instances where the record supplies the requisite substantial evidence to support the ALJ's RFC, albeit at a lesser included exertional capacity.  In other words, any error was harmless.[3]  When, as here, the ALJ determines that a claimant can perform light work, he also *per se* determines that she can perform sedentary work.  20 C.F.R. § 416.967(b).  In this case, Bryant's own representations and testimony provide substantial evidence to support the ALJ's implicit determination that she retained the exertional capacity for sedentary work.[4]

Sedentary work is defined as

[t]he ability to lift no more than 10 pounds at a time and occasionally to lift or

---

[3]  "Procedural perfection in administrative proceedings is not required."  *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).  Procedural improprieties "constitute a basis for remand only if such improprieties would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir.1988); *see also Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (ALJ's omission does not require remand unless it affected claimant's substantial rights).

[4]  In fact, the telephone quotation clerk job identified by the VE, and accepted by the ALJ, is performed at the sedentary exertional level.

12

carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

*Titles II and XVI: Determining Capability to Do Other Work--implications of a Residual Functional Capacity for less than a Full Range of Sedentary Work*, SSR 96-9p (SSA July 2, 1996).

When Bryant last was before the court, the undersigned came close to finding that she retained

the capacity for sedentary work:

> Bryant testified that she can squat, stoop, and pick up objects off of the floor.  (Tr. 159).  She also can lift her arms over her head, and sometimes climb stairs.  (*See*, Tr. 159-160).  Although plaintiff's testimony that she can lift a gallon of milk (which according to the U.S. Geological Survey weighs 8.33 pounds) does not satisfy the lifting requirements for light work, it is close enough to the ten pound lifting requirement for sedentary work that it does not significantly erode that occupational base.

*Bryant I* (Tr. 203, n3).

The undersigned further noted that when asked about her ability to sit, Bryant replied that she

could sit comfortably.  *Id*.  (Tr. 204).  Nonetheless, the undersigned declined to find that Bryant

retained the capacity for sedentary work because of evidence that she might need a sit/stand

option to alleviate her gastrointestinal symptoms.  *Id*.

Upon further review, however, it is apparent that standing helped relieve Plaintiff's

abdominal pain, not her gastrointestinal symptoms.  (Tr. 121).  Moreover, Plaintiff testified that

medication helped control her diarrhea symptoms so she could function and do the things she

needed to do.  (Tr. 156-157).  In addition, by November 11, 2007, Bryant's diarrhea symptoms

13

had improved.  (Tr. 320-321, 513-514).[5]

As for Bryant's abdominal pain, she reported good control with her medication.  (Tr. 421-424).  Even when her pain reaches an eight on a ten point scale, she still feels great.  *Id*.  Moreover, it is more activity, not less, that aggravated her pain.  *Id*.  Her pain medication helps her to live somewhat of a normal life.  (Tr. 487).  She also does not suffer any side effects from her medication.  (Tr. 294).

The court recognizes that at the latest hearing, Bryant testified that could not sit for an hour because her legs cramp up as a result of her circulation condition; thus, she has to arise and move around.  (Tr. 490).  Dr. Laing testified, however, that Bryant's pulmonary emboli were a function of her deep venous thrombosis that troubled her prior to the alleged disability onset date.  (Tr. 508-509).[6]  Furthermore, in her latest functional capacity report completed in November 2007, Bryant did not indicate that her ability to sit was affected by her impairments.  (Tr. 285).  Finally, there is nothing in the medical treatment record to support Bryant's allegation that she suffered muscle spasms in her legs.  Even if the court were to credit Plaintiff's complaint, there is no evidence that she could not obtain relief with the use of compression stockings, combined with the usual three breaks permitted during the work day.

The court further notes that at the latest hearing Plaintiff testified that she could only walk for about ten minutes before needing to sit down.  (Tr. 489-490).  After sitting for fifteen

---

[5]  During the period that she suffered from diarrhea, Plaintiff reported up to six episodes per day, with one occurring usually after her first meal of the day.  (Tr. 156, 322-323).  Assuming that one or more episodes also occurred in the evening, there is no indication that the remaining episodes could not have been accommodated during the three breaks that employers typically permit during the work day.  *See* Tr.  167.

[6]  In fact, Plaintiff testified that she had an ICV filter placed on her leg that stops blood clots from traveling to her lungs.  (Tr. 162).

14

minutes, she is able to arise and move around again.  *Id*.  In other words, Bryant is able to walk for a total of 20 minutes per hour, or up to two hours in an eight hour day, which, of course, coincides with the exertional demands of sedentary work.  SSR 96-9p.

In sum, although the instant record lacks a cognizable medical source statement, Plaintiff's own testimony at the hearing(s) and statements to the state agency, plus her medical records, provide substantial evidence to support the ALJ's implicit alternative finding that she retained the exertional capacity for sedentary work.  By now, three non-examining agency physicians/experts have opined that Plaintiff's impairments are non-severe.  (Tr. 116, 348, 469-473).[7]  While to the untrained layperson, it certainly seems that unresolved, recurring hernia difficulties and associated pain would have at least some impact on a claimant's exertional capacity, it is manifest that, at minimum, these physicians do not believe that her impairments are disabling.

The last time this matter was before the court, the undersigned afforded Plaintiff the benefit of the doubt, and remanded the matter for further development.  It is striking that in the roughly three and one-half years between the time of the remand and the latest denial of review by the Appeals Council, the record remains bereft of a medical source statement from any of Plaintiff's treating physicians.  While the ALJ has the duty to develop the record, the claimant still retains the burden of proof for the first four steps of the sequential evaluation process.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  In the absence of any contradictory opinions from Plaintiff's treating physicians, the opinions of the non-examining agency physicians remain uncontroverted.  At this point, and based on the instant record, the court is compelled to agree with the physicians' impressions that Bryant's impairments are not disabling.

_____

[7]  The original agency physician simply wrote "4L to NS."  (Tr. 116).

## II.    Step Five

Plaintiff contends that the ALJ erred in his step five determination because he relied on VE testimony from Plaintiff's prior hearing, without notification to counsel, or even acknowledgment that he did so in his decision.  Yet, to the extent that the ALJ may have violated Plaintiff's due process rights by not affording her the right to cross-examine the VE, Plaintiff still must demonstrate resulting prejudice.  *Curtis v. Commissioner Social Sec. Admin.*,  2008 WL 919692 (W.D. La. Feb. 27, 2008) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir.1981) (must show substantial prejudice in order to prove denial of due process in an administrative proceeding)).

Plaintiff argues that the ALJ's omission deprived her of the opportunity to present hypotheticals to the VE that included additional limitations of functioning that were not adopted by the ALJ in his RFC.  *See* Pl. Brief, pg. 10.  A hypothetical posed to the VE, however, need only reasonably incorporate the disabilities and limitations recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994); *Weimer v. Astrue*,  2008 WL 2604995  (5th Cir. Jul. 1, 2008) (unpubl.).  Here, the ALJ's hypotheticals to the VE at the prior hearing included all of the limitations recognized in his RFC, and that assessment, as modified, is supported by substantial evidence.  *See* discussion, *supra*.

Furthermore, as it turns out, VE testimony was not even required in this case.  Non-exertional impairments that do not significantly impact the occupational base for work do not preclude use of the guidelines.  *See Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citations omitted) (when a claimant's non-exertional impairments do not significantly affect her residual functional capacity, the ALJ may rely exclusively on the Guidelines); *see also Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999); *Selders v. Sullivan*, 914 F.2d 614, 618-619 (5th Cir.

16

1990).  As discussed above, the record substantially supports the ALJ's implicit determination that Plaintiff retained the exertional capacity for sedentary work.  The additional limitations imposed by the ALJ do not significantly erode the capacity for sedentary work.  *See* SSR 96-9p. Moreover, give Bryant's vocational factors, and with an RFC for sedentary work, the Medical-Vocational Guidelines direct a finding of not disabled.  20 C.F.R. § 416.969; Rule 201.21, Table 1, Appendix 2, Subpart P, Regulations No. 4.  *Id.*  In sum, any error was harmless.

<u>Conclusion</u>

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Bryant is not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error.  Accordingly,

IT IS RECOMMENDED that the Commissioner's decision be AFFIRMED, in its entirety, and that this civil action be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen  (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

17

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 22nd day of July, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

18